# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| Sergio BRIZUELA, <br><br> on behalf of himself and all others similarly situated, <br><br> *Petitioner*, <br><br> v. <br><br> Jose FELICIANO, Warden, New Haven Correctional Center; Leo C. ARNONE, Commissioner, Connecticut Department of Correction; Connecticut Department of Correction, <br><br> *Respondents*. | Case No. 3:12-cv-00226 <br><br> Date: February 22, 2012 |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE AND LEAVE TO PROPOUND PRECERTIFICATION DISCOVERY REQUESTS

**ORAL ARGUMENT REQUESTED**

## INTRODUCTION

Sergio Brizuela brought this action for habeas corpus or, in the alternative, declaratory and injunctive relief on behalf of a proposed class of all persons who are or will be held in the custody of the Connecticut Department of Correction (DOC) based solely on an administrative detainer notice issued by U.S. Immigration & Customs Enforcement (ICE). Two days after Sergio Brizuela filed this action, Secretary of Homeland Security Janet Napolitano announced the activation of a controversial ICE program entitled "Secure Communities" in testimony before Congress. Throughout Connecticut, Secure Communities begins today. See Silva Decl., Exhibit D, Statement by Connecticut Undersecretary for Criminal Justice Mike Lawlor.

With the activation of Secure Communities in Connecticut, changes to federal policy are set to dramatically and immediately increase the number of people subjected to Respondents' unconstitutional practice of confining individuals solely on the basis of an immigration detainer. For this reason, the Court should expeditiously order Respondents to show cause why the writ should not issue and why declarative and injunctive relief should not be granted. The Court should also allow appropriate precertification discovery to begin, and order that Respondents comply with discovery requests on an expedited basis.

It is the policy and practice of Respondents to routinely enforce unlawful immigration detainers issued by ICE. Individuals are held by Respondents solely on the basis of these detainers without a probable cause hearing before a neutral decisionmaker, or any probable cause determination whatsoever, and in the absence of sworn evidence. These detainers lack any governing standards and improperly conscript state and local criminal law enforcement officials in furtherance of a federal civil enforcement regime. Because these detainers are themselves unconstitutional, they can provide no legal authority for continued detention. Nevertheless, on

the basis of these detainers alone, Respondents regularly maintain custody of proposed class members after all other legal authority for custody has expired. See Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief, ECF No. 1 (hereinafter "Petition") at ¶ 9. Petitioner Brizuela, for instance, was detained by Respondents solely on the basis of an ICE detainer for four days after his discharge from state criminal custody.  Respondents therefore continuously and irreparably deprive members of the proposed class of their Fourth and Fourteenth Amendment rights to be free of arbitrary and unreasonable executive detention, and unlawfully commandeer state correctional resources in the service of a federal regulatory regime, in violation of the Tenth Amendment.

Over the past five months, several individuals have filed individual habeas petitions in the U.S. District Court for the District of Connecticut challenging Respondents' policy of physically confining them solely on the basis of an ICE detainer. Each prior petitioner was unable to obtain a ruling on the merits of the habeas petition before being transferred out of the custody of Respondent Department of Correction, thus mooting the petition.  These individual actions offer examples, however, of the operation of DOC's policy of honoring immigration detainers.

On October 1, 2011, Roberto Carlos Menjivar Lopez was arrested in Waterbury, Connecticut and charged with a single misdemeanor count of sixth degree larceny, based on an alleged shoplifting incident. Mr. Menjivar Lopez had no prior criminal history.  Respondents lawfully detained Mr. Menjivar Lopez until the State's Attorney dismissed the single charge against him. DOC then continued to detain Mr. Menjivar Lopez for one day solely on the basis of an immigration detainer after the dismissal of the criminal charge. See Lopez v. Feliciano, No. 3:11-cv-01743 (JCH) (D. Conn filed Nov. 11, 2011), ECF No. 1. Mr. Menjivar Lopez filed a

petition for a writ of habeas corpus, but ICE assumed custody before process was served. The habeas petition was dismissed. Id., ECF No. 6. ICE correctly determined that Mr. Menjivar Lopez was neither dangerous nor a flight risk and released him without any bond, subject to an order that he report regularly to ICE offices in Hartford. See Silva Decl., Exhibit A, Order of Release on Own Recognizance.

On October 6, 2011, Manuel Sebastian Castro Largo was arrested in Meriden, Connecticut and charged with driving without a license and registration and for interfering with arrest. On October 7, 2011, the Connecticut Superior Court ordered Mr. Castro Largo released on his own recognizance pending disposition of his minor traffic charges. Despite having been ordered released, Respondents detained Mr. Castro Largo for five days solely on the basis of an immigration detainer and without a probable cause hearing, until ICE assumed custody of him, on October 12, 2011. See Silva Decl., Exhibit B, Claim of Manuel Sebastian Castro Largo under the Federal Torts Claims Act. A next friend of Mr. Castro Largo filed a habeas petition, Gaspar v. Feliciano, No. 3:11-cv-01548 (PCD) (D. Conn filed Oct. 11, 2011), ECF No. 1, but ICE assumed custody before a summons was served. ICE subsequently released Mr. Castro Largo on bond. Mr. Castro Largo pleaded guilty to an infraction and paid a fine to resolve his criminal charges, and his habeas petition was dismissed. Id., ECF No. 5.

On November 20, 2011, Petitioner in the instant action, Sergio Brizuela, was arrested by authorities in East Haven, Connecticut after helping to break up a fight in a local bar. Petition, ECF No. 1, at ¶ 2. Mr. Brizuela was initially charged with several crimes, including a felony count of strangulation. See Silva Decl., Exhibit C, Judicial Branch Pending Case Detail. The State's Attorney subsequently withdrew the felony charge, and on February 10, 2012, Mr. Brizuela pleaded guilty to two misdemeanors and one motor vehicle infraction. Petition, ECF

No. 1 at ¶ 4.  He received a suspended sentence and was ordered released with credit for time served.  Id. at ¶ 5.  Notwithstanding their lack of any legal authority to do so, Respondents continued to detain Mr. Brizuela beyond February 10, 2012 solely on the basis of an immigration detainer, and turned Mr. Brizuela over to ICE four days later, on February 14, 2012.[1]

Respondents violated the constitutional rights of Mr. Menjivar Lopez, Mr. Castro Largo, and Petitioner Sergio Brizuela, as well as all members of the proposed class, by continuing their detention after all legal authority to incarcerate them had expired, at the behest of the federal immigration authorities.  See Petition at ¶¶ 32-63.

Secure Communities is a federal program designed to greatly expand and accelerate this process by initiating an automated immigration status check every time a person is fingerprinted upon arrest and booking by a state, local, or tribal law enforcement agency anywhere in Connecticut.  ICE then issues the same flawed immigration detainers challenged in this action, directing state, local and tribal agencies to detain individuals until ICE decides assume custody.  Secure Communities is being activated across Connecticut today.  See Silva Decl., Exhibit D, Statement by Connecticut Undersecretary for Criminal Justice Mike Lawlor. As a result, the universe of individuals who will be subject to Respondents' unconstitutional practice of detention and irreparable harm is set to grow significantly.  It is therefore with the upmost urgency that Petitioner requests issuance of order to show cause and to commence precertification discovery.

## ARGUMENT

I. **THIS COURT SHOULD ISSUE THE ORDER TO SHOW CAUSE AND SET AN EXPEDITIOUS RETURN DATE.**

   **A. This Court Should Issue an Order To Show Cause.**

---

[1] This action was filed on February 13, 2012, while Mr. Brizuela was still in the custody of the Respondents.  Mr. Brizuela also moved for certification as a representative action on the date he filed this action. ECF No. 2.

5

This Court has the authority to issue an order to show cause why the writ of habeas corpus should not issue.  28 U.S.C. § 2243 ("A court . . . entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto."); see also Walker v. Johnston, 312 U.S. 275, 284 (1941) ("This practice has long been followed by this court and by the lower courts.").

Further, unless the petition is frivolous or obviously meritless, the Court must issue an order to show cause.  See U.S. ex rel. Holes v. Mancusi, 423 F.2d 1137, 1141 (2d Cir. 1970); U.S. ex rel. Robinson v. Pate, 345 F.2d 691, 697 (7th Cir. 1965) ("Under the mandatory provisions of 28 U.S.C. § 2243 a return is required unless the petition is patently frivolous or obviously without merit") (emphasis added); Wright v. Dickson, 336 F.2d 878, 881 (9th Cir. 1964) ("Unless a petition for habeas corpus reveals on its face that as a matter of law the petitioner is not entitled to the writ, the writ or an order to show cause must issue . . . . The usual practice is for the petitioned court to issue an order to show cause") (emphasis added).

In this case, Petitioner has, on behalf of himself and a class of other individuals who are presently or will be held solely on the basis of an immigration detainer, challenged the legality of that detention and sought release from custody or, in the alternative, declaratory and injunctive relief.  The petition is not frivolous or meritless and so an order to show cause why that relief should not be granted is therefore appropriate.

> **B. Secure Communities Will Substantially Increase the Number of Unlawful Detentions in Connecticut Pursuant to Immigration Detainers and Its Implementation in the State Heightens the Need for an Expeditious Return.**

Starting today, ICE will increase the number of standardless immigration detainers it issues in Connecticut through the implementation of a program it calls "Secure Communities."

See Silva Decl., Exhibit D, Statement by Connecticut Undersecretary for Criminal Justice Mike Lawlor.  Under this program, when a local police department makes an arrest and submit the individual's fingerprints to the FBI for criminal history check, the FBI will automatically share that data with The Department of Homeland Security (DHS) so that the agency can run those fingerprints through its own database of biometric information about individuals who have had contact with the immigration authorities.  See Silva Decl., Exhibit E, DHS Secure Communities Website.  DHS-ICE uses the results of this process to issue immigration detainers to custodial agencies for individuals the Department believes may be removable from the United States. See Silva Decl., Exhibit E, Secure Communities Standard Operating Procedures.

ICE claims that it has authority to impose Secure Communities on states and localities without their consent and plans to activate the program nationwide by 2013.  See Silva Decl., Exhibit F, Homeland Security Advisory Council, Task Force on Secure Communities: Findings and Recommendations at 5-7.  But it has failed to identify adequate legal authority for the program. See id. at 13.  Nor has it identified legal authority for state or local officials to hold persons based on nothing more than an ICE detainer.

Immigration detainers are an integral part of the Secure Communities program; indeed, the program depends on immigration detainers to work.  See Silva Decl., Exhibit E, Secure Communities Website. The proposed class will expand dramatically as Secure Communities is activated in Connecticut.  Secure Communities will automatically result in an immigration status check for every individual arrested anywhere in the state, no matter how minor the charges against that individual or their eventual disposition.  Those status checks will enlarge the total pool of individuals against whom detainers will be lodged.

As the principal custodial agency in Connecticut, Respondent Connecticut Department of Correction and its Commissioner, Respondent Arnone, are responsible for virtually all pretrial and postconviction detention in Connecticut. These respondents have physical custody of the vast majority of individuals who are subject to immigration detainers in Connecticut, and will have custody of those who are subject to such detainers under Secure Communities.

28 U.S.C. § 2243, which provides the process for issuing an Order to Show Cause, prescribes a return within three days of the order's issuance. The heightened urgency created by the high likelihood of an immediate and dramatic expansion of unconstitutional detention by Respondents justifies the expeditious issuance of an Order to Show Cause and strict adherence to the statutory three-day return period set out in 28 U.S.C. § 2243.

II.     **THE COURT SHOULD SWIFTLY GRANT LEAVE TO PROPOUND PRECERTIFICATION DISCOVERY REQUESTS.**

   **A. This Court Has The Authority To Order Precertification Discovery.**

Precertification discovery is a standard practice of class action litigation. It serves the interests of the Court and the parties in identifying and narrowing the common questions of law and fact, and testing whether the requirements of class certification are met: "[D]iscovery often has been used to illuminate issues upon which a district court must pass in deciding whether a suit should proceed as a class action under Rule 23, such as numerosity, common questions, and adequacy of representation." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 n.13 (1978).

The Second Circuit has long recognized that Rule 23 of the Federal Rules of Civil Procedure, while not directly applicable in a habeas suit, nevertheless supplies an appropriate analog for the rules and procedures to be used in representative habeas actions. In United States ex rel. Sero v. Preiser, 506 F.2d 1115, 1125-26 (2d Cir. 1974), the Second Circuit allowed the

8

petitioner to represent a class of young adults serving state sentences who were challenging the length of those sentences, certifying the case to proceed as "a multi-party proceeding similar to the class action authorized by the Rules of Civil Procedure." Id. at 1125.

Because Rule 23 is not, strictly speaking, controlling in representative habeas actions, the Second Circuit fashioned procedures appropriate for such an action pursuant to the All Writs Act, 28 U.S.C. § 1651. See Harris v. Nelson, 394 U.S. 286, 299 (1969) (holding courts may use "appropriate modes of procedure, by analogy to existing rules or otherwise in conformity with judicial usage" in the habeas context). In so doing, the Second Circuit explicitly looked to Rule 23 and applied its four criteria — numerosity, typicality, commonality, and adequacy — to the petitioners' request for certification. Sero, 506 F.2d at 1126-27.[2] The Second Circuit has thus adopted Rule 23 as a guide to the administration and management of representative habeas actions.

Moreover, under longstanding Second Circuit precedent, district courts have the authority to order discovery prior to Rule 23 class certification. Sirota v. Solitron Devices, Inc., 673 F.2d 566, 571 (2d Cir. 1982) ("[T]here can be no doubt that it is proper for a district court, prior to certification of a class, to allow discovery and to conduct hearings to determine whether the prerequisites of Rule 23 are satisfied."); Phillip Morris, Inc. v. Nat'l Asbestos Workers Medical Fund, 214 F.3d 132, 135 (2d Cir. 2000) (per curiam) (affirming Sirota); see also, Charles v. National Mut. Ins. Co., 2010 WL 7132173, at *4 (E.D.N.Y. May 27, 2010); Rahman v. Smith & Wollensky Rest. Group, 2007 WL 1521117, at *3 (S.D.N.Y. May 24, 2007); Nat'l Org. for

---

[2] The Sero court was hesitant to fully extend Rule 23 to representative habeas actions, noting "the very substantial burdens of discovery and proof which would be required to rebut even the most frivolous allegations." 506 F.2d at 1125. However, the reason for the Sero court's hesitancy is not relevant in this matter. Mr. Brizuela's allegations are far from frivolous, and he seeks limited discovery to assist the Court in deciding the certification question and in shaping the appropriate class. Id. (quoting Harris, 394 U.S. at 297).

9

Women, Farmington Valley Chapter v. Sperry Rand Corp., 88 F.R.D. 272, 276 (D. Conn. 1980). Circuit precedent clearly permits this Court to order precertification discovery in this action.

### B. Precertification Discovery is Necessary in this Case.

To enable Petitioner a fair opportunity to demonstrate that the Rule 23 requirements are satisfied, and to permit the Court to adjudicate the pending motion for class certification, ECF No. 2, on a full record, precertification discovery is appropriate in this case.  Fed. R. Civ. P. 23(a); Sero, 506 F.2d at 1126-27.

Respondents are the only source of the information Petitioner needs to adequately brief his pending motion for class certification or representative habeas action. See ECF No. 2. Respondents possess the detention records of potential class members, including, but not limited to, which individuals are the subject of an immigration detainer and the nature of each individual's criminal charges and/or convictions. This information is germane to the Petitioner's ability to satisfy the requirements of Rule 23(a).

Petitioner needs this information to demonstrate numerosity, commonality, typicality, and adequacy. First, there are some ways in which members of the proposed class may differ. For example, DOC holds many potential class members on immigration detainers which are clearly ultra vires to the governing statute.  See Petition, ECF No. 1 at ¶¶ 23-26.  But it holds other class members, namely those convicted of certain controlled substance violations, on immigration detainers that arguably may be authorized by federal statute.  See id.  (Stating that ICE may be authorized to issue a detainer regarding persons convicted of a controlled substance violation does not render that detainer mandatory on Respondents, nor does it supply legal authority for Respondents to hold the subject of the detainer.)

Similarly, Respondents detain some potential class members are held for less than the 48 hours, while holding others for longer. See Petition, ECF No. 1 at ¶¶ 27-33. While DOC holding an individual based solely on a detainer for less than 48 hours is unconstitutional, longer periods of detention also implicate the bright-line 48-hour rule of County of Riverside v. McLaughlin, 500 U.S. 44 (1991). Information about the individuals in DOC custody currently subject to detainers can therefore help inform this Court's definition of a class and of potential subclasses. Precertification discovery is the best avenue available to Petitioner to secure such information.

**C. Petitioner Seeks Limited Discovery Relevant to the Class Allegations and Such Discovery Would Not Impose Any Undue Burden on Respondents.**

1. Routine Precertification Discovery.

Petitioner seeks leave to propound precertification discovery requests that would be permitted under the Federal Rules of Civil Procedure, including appropriate requests for production, interrogatories, and depositions. Petitioner foresees that such precertification requests will include, but not be limited to, the following:

a) *Statistical and Aggregate Data*

Petitioner will seek statistical and other data in the possession of the DOC that is probative of the number and relevant characteristics of proposed class members. In particular, Petitioner will seek data, including but not limited to:

- The total number of individuals in DOC custody against whom a detainer has been lodged, both retrospectively and, upon the activation of Secure Communities today, February 22, 2012, on an ongoing basis;
- The number of individuals held solely on the basis of an immigration detainer, both retrospectively and on an ongoing basis;

- The average number at any time of individuals in DOC custody against whom a detainer has been lodged.  This information may be provided through statistical sampling; and

- The average number at any time of individuals in DOC custody who are held solely on the basis of an immigration detainer.  This information may be provided through statistical sampling.

This information bears on the issue of numerosity, and is in the sole possession of the DOC.

Petitioner will further seek associated information bearing on the questions of commonality, typicality, and adequacy:

- For each individual identified, the facility in which he or she is or was detained;

- For each individual identified, the length of his or her detention based solely on an immigration detainer;

- For each individual identified, the criminal charges and/or convictions associated with his or her incarceration at the relevant time.

When such statistical or aggregate information is necessary to establish a petitioner or plaintiff's case for certification of a class and is in the sole possession of the defendant, courts have deemed the production of this type of precertification discovery necessary and proper.  See, e.g., Nat'l Org. for Women, 88 F.R.D. at 278 (permitting precertification discovery of the number of males and females employed in various positions by the defendant in a gender discrimination case); Velasquez v. Faurer, 101 F.R.D. 8, 9 (D. Md. 1983) (authorizing pre-certification discovery in race discrimination case of "information regarding the numbers and comparative percentages of whites and Hispanics who applied for or who were considered for hiring or promotion by defendant as well as information concerning those who were evaluated, hired and/or promoted by the aforementioned Agency"); Nash v. City of Oakwood, Ohio, 90

F.R.D. 633, 637 (S.D. Ohio 1981) (permitting pre-certification "discovery of statistical or factual data [which] may well be relevant to the class action question"); Hastings v. Asset Acceptance, LLC, CIV.A. 1:06-CV-418, 2007 WL 461477 at *3 (S.D. Ohio Feb. 7, 2007) (unpublished) ("Defendants . . . are in possession and control of the documents and evidence needed to resolve [certification] issues . . . . This information is clearly relevant to the issues of class certification and the merits and should be produced.").

      This request will not be burdensome, nor will it implicate privacy concerns. It appears that DOC already tracks which individuals have an immigration detainer on file electronically. On its online inmate locator system, DOC's "Inmate Information" report contains a "Detainer" field which at times indicates an "immigration" detainer. See Silva Decl., Exhibit G, Example DOC Inmate Information Printouts.  This suggests that DOC's electronic database contains a populated field indicating whether an immigration detainer has been lodged against a given individual, facilitating uncomplicated retrieval of the requested information.  Further, this information is routinely available to the public via DOC's website, and so the Department appears to recognize that no privacy concerns are implicated in releasing this information in discovery.  However, insofar as there are concerns regarding privacy, this court has already made available a standing protective order which DOC may invoke at any time.  See ECF No. 4. Therefore, even if "disclosure of the information sought by plaintiff could be invasive of the privacy rights of non-parties, as well as putative class members, these concerns can be adequately addressed through a well-crafted protective order limiting access to the parties, their attorneys, and Court personnel." Hastings, CIV.A. 1:06-CV-418, 2007 WL 461477, at *3.

b) *Immigration Detainers and Other Immigration Documentation.*

For each putative class member, Petitioner will also request copies of the Immigration Detainer (DHS Form I-247), see Silva Decl., Exhibit H, Sample Immigration Detainer, and other documents related to that individual issued by DHS, including, but not limited to, a Notice to Appear (Form I-862) and an Administrative Warrant of Removal (Form I-205). This documentation relates to ICE's purported justification and basis for lodging a detainer against an individual. Discovery of this information will reveal whether DOC treats all potential class members the same, regardless of ICE's purported justification for lodging a detainer, and may therefore bear upon the questions of commonality, typicality, and adequacy for the proposed class. This kind of request for production of documents is routine under Fed. R. Civ. P. 34. And, as noted above, any privacy concerns the DOC has may be addressed by invoking the standing protective order in this case. ECF No. 4.

2. Additional Pre-Certification Discovery Appropriate Under the Circumstances.

In addition to the routinely available tools of discovery, the unique circumstances of this case justify additional measures for facilitating access to potential class members by Petitioner's counsel. This discovery is proper under the circumstances for three reasons. First, DOC's physical custody of members of the proposed class within corrections facilities means that Respondents have total control over and access to class members, while access by Petitioner's counsel is severely limited. Second, the extraordinarily rapid turnover of proposed class members currently held on a detainer seriously exacerbates the problems associated with counsel's limited access to potential class members with relevant information. Finally, the contours of the class will become less predictable with the activation of Secure Communities.

Therefore, Petitioner seeks leave to request the following additional forms of pre-certification discovery:

        a) *List of Putative Class Members; Or, in the Alternative, Notice to Putative Class Members.*

Petitioner will request a list of the names of each individual who may be a class member currently in the custody of the DOC, along with DOC identification number, and the name of the facility in which the individual is incarcerated. Petitioner will further request that DOC arrange for undersigned counsel to have routine access for legal visits with or telephone calls to potential class members. This information and access is necessary to investigate the constitution of the class, determine whether sub-classes are appropriate, and establish numerosity, commonality, typicality, and adequacy. Such information will assist the Court in ruling upon the class certification motion.

Where a class consists of individuals in prison or jail, information about proposed class members is controlled by prison officials, and particularly difficult for class representatives to obtain by other means. Therefore, in such special circumstances, courts have recognized that a list of prisoners who may be class members is a legitimate precertification discovery request. See, e.g., Franklin v. Barry, 909 F. Supp. 21, 29 (D.D.C. 1995) ("[L]isting of all Hispanic prisoners incarcerated in D.C. institutions" provided by defendant in precertification discovery established numerosity).

In addition, it is not uncommon for courts to authorize discovery of contact information for proposed class members when that information is in the possession and control of the defendant. See, e.g., Artis v. Deere & Co., 276 F.R.D. 348, 352 (N.D. Cal. 2011) (noting that "[t]he disclosure of names, addresses, and telephone numbers [of proposed class members] is a common practice in the class action context") and (collecting cases); Whitehorn v. Wolfgang's

15

Steakhouse, Inc., 09 CIV. 1148 (LBS), 2010 WL 2362981 (S.D.N.Y. June 14, 2010) (unpublished) (permitting "pre-certification discovery of employee contact information" in Fair Labor Standards Act suit).  In Artis, the court found that the plaintiff was "entitled to the contact information of putative class members" because that information "and subsequent contact with potential class members is necessary to determine whether Plaintiff's claims are typical of the class, and ultimately whether the action may be maintained as a class action." Id.[3]

        b) *Continuing Disclosure; Or, in the Alternative, Notice to Proposed Class Members*.

In light of the imminent activation of the Secure Communities program across Connecticut, the number of individuals in the proposed class may soon dramatically increase.  In addition, the distribution of crimes with which those individuals have been charged and of which they have been convicted may change once the program is activated as more minor offenders or non-offenders are swept up into Secure Communities' broad net. Therefore, Petitioner requests, in addition to information regarding current proposed class members in section II.C.2.(a), ongoing notification of every detainer lodged against an individual in DOC custody until the Court has determined whether the class should be certified.  This information will permit Petitioner to establish numerosity, commonality, typicality, and adequacy under the new Secure Communities regime automating the issuance of immigration detainers.

It is critical that such information be provided immediately upon receipt of the detainer by DOC. Detainers purport to authorize detention for 48 hours, not including weekends and holidays, by the DOC after state authority to detain ceases. Some individuals against whom a

---

[3] In the event this Court does not order immediate discovery of all individuals currently held in DOC custody solely on the basis of an ICE detainer, updated regularly by Respondents, Petitioner requests in the alternative that the Court direct that, upon service of an ICE detainer on a detainee, Respondents simultaneously serve each putative class member, and his or her counsel of record, written notification in his or her native language of the pendency of this action and undersigned counsel's contact information. Such notice would also be served on the criminal defense attorney for each potential class member. See Silva Decl., Exhibit H, Sample Immigration Detainer (directing service upon its subject).

detainer has been lodged may, therefore, be held for only a matter of days or even hours before being transferred to ICE custody. Others, like Petitioner Brizuela or the prior petitioners Menijar Lopez and Castro-Largo, may be detained for up to four or five days by Respondents. If notice is not immediate, Petitioner may have no opportunity to investigate such recurring instances of brief but unlawful detention, particularly if ICE subsequently transfers potential class members out of state or deports them. Lack of immediate notification may therefore artificially skew information bearing on numerosity, commonality, typicality, and adequacy by excluding those held briefly from the total class sample.

Recognizing the burden this request may pose, Petitioner is prepared to accept an agreement that Respondents will simultaneously serve each putative class member, and his or her counsel of record, written notification in his or her native language of the pendency of this action and undersigned counsel's contact information as soon as the detainer is lodged and on a continuing basis until the Court has determined whether the class should be certified in this matter.

## CONCLUSION

For the foregoing reasons, Petitioner Brizuela respectfully requests that this Court expeditiously order Respondent to show cause why the writ should not issue or, in the alternative, declarative and injunctive relief should not be granted within the three-day period required by 28 U.S.C. § 2243. Petitioner further requests that this Court grant leave to propound the requested precertification discovery and order Respondents to respond to discovery requests in an expedited manner.

DATED: February 22, 2012
New Haven, Connecticut

                                 Respectfully submitted,

                                          /s/
                                Michael J. Wishnie (ct27221)
                                Muneer I. Ahmad (ct28109)
                                Travis Silva, Law Student Intern
                                Matthew S. Vogel, Law Student Intern
                                Jessica Vosburgh, Law Student Intern
                                Cody Wofsy, Law Student Intern

                                The Jerome N. Frank Legal Services Organization
                                P.O. Box 209090
                                New Haven, CT 06520-9090
                                Phone: (203) 432-4800
                                Fax: (203) 432-1426
                                michael.wishnie@yale.edu

                                *Counsel for Petitioner*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on February 22, 2012, a copy of the foregoing Memorandum of Law in Support of Petitioner's Motion for an Order to Show Cause and Leave to Propound Precertification Discovery Requests was filed electronically and that notice of this filing was sent by FedEx to the parties at the addresses listed below.

Jose Feliciano  
Warden, New Haven Correctional Center  
245 Whalley Avenue  
P.O. Box 8000  
New Haven, CT 06511  

Leo C. Arnone  
Commissioner  
Connecticut Department of Correction  
24 Wolcott Hill Road  
Wethersfield, CT 06109  

George Jepsen  
Attorney General  
Office of the Attorney General  
55 Elm St.  
Hartford, CT 06106  

                                             /s/  
                                 Michael J. Wishnie (ct27221)

                                 The Jerome N. Frank Legal Services Organization  
                                 P.O. Box 209090  
                                 New Haven, CT 06520-9090  
                                 Phone: (203) 432-4800  
                                 Fax: (203) 432-1426  
                                 michael.wishnie@yale.edu

                                 *Counsel for Petitioner*